IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| RICHARD MASUD, Individually and On Behalf of All Others Similarly Situated;<br><br>Plaintiff,<br><br>vs.<br><br>TD AMERITRADE, INC., and TD AMERITRADE CLEARING, INC.,<br><br>Defendants. | **8:24CV499**[1] |
| DJAKARTA A. JACOBS, Individually and On Behalf of All Others Similarly Situated;<br><br>Plaintiff,<br><br>vs.<br><br>TD AMERITRADE CLEARING, INC., and TD AMERITRADE, INC.,<br><br>Defendants. | **8:25CV16**<br><br>**MEMORANDUM AND ORDER** |

Before the Court is: (1) Richard Masud's Motion to Consolidate Cases 8:24-cv-499 and 8:25-cv-16 (Filing No. 14), (2) Masud's Motion for a Hearing (Filing No. 26), (3) the California Plaintiffs'[2] Motions to Intervene and Transfer (Filing No. 18)[3]; and (4) TD Ameritrade's[4] Motions to Transfer (Filing No. 32)[5].

---

[1] The Parties transfer arguments are identical for the Masud and Jacobs cases. Unless otherwise indicated, the Courts cites to the *Masud* docket (8:24-cv-499).
[2] Proposed intervenors Mary Loughlin, Rosemary Orlando, Edward Carr, Donal Saunders, Michael Davis, and Terrance TJ McDonald.
[3] Case No. 8:25-cv-16, Filing No. 7.
[4] Defendants TD Ameritrade, Inc. and TD Ameritrade Clearing, Inc.
[5] Case No. 8:25-cv-16, Filing No. 18.

Across the country, plaintiffs have sued their brokerage firms, alleging the firms "swept" uninvested cash into interest bearing accounts in a manner that put the interest of the firm ahead of the interests of the clients. Two of those plaintiffs, Richard Masud and Djakarta Jacobs ("the Nebraska Plaintiffs") filed putative class actions against brokerage firm TD Ameritrade in the District of Nebraska. But TD Ameritrade is a wholly owned subsidiary of the Charles Schwab Corporation ("Schwab"). And nine months ago, the California Plaintiffs, including a former TD Ameritrade customer, filed putative cash sweep class actions against Schwab in Central District of California. So, under the "first filed rule," which provides "in cases of concurrent jurisdiction, the first court in which jurisdiction attaches has priority to consider the case," this litigation should proceed in the Central District of California. *Nw. Airlines, Inc. v. Am. Airlines, Inc.*, 989 F.2d 1002, 1005 (8th Cir. 1993).

## BACKGROUND

These cases arise from a "cash sweep" program operated by TD Ameritrade that is the subject of putative class action lawsuits pending in two jurisdictions: the District of Nebraska and the Central District of California.

### A. TD Ameritrade, Schwab, and their Cash Sweep Programs.

For many years TD Ameritrade was a financial services firm headquartered in Nebraska. *See* Filing No. 1 at 7, ¶¶ 17–18. Then in 2020, TD Ameritrade was acquired by Schwab. Filing No. 20-1; Filing No. 1 at 4, ¶ 8.[6] Schwab acquired TD Ameritrade's

---

[6] In considering a motion to transfer, the Court is not confined to the pleadings and "may consider undisputed facts presented through affidavits, depositions, stipulations, and other relevant documents." *Dial Tech., LLC v. Bright House Networks, LLC*, No. 13-CV-2995 MJD/TNL, 2014 WL 4163124, at *8 (D. Minn. Aug. 21, 2014). Here, the Court considers filings with the SEC, filings with state securities regulators, FINRA records, the pleadings in related cases, and judicial decisions. The Nebraska Plaintiffs do not contest the accuracy of these documents.

assets and liabilities and moved its customers' money into Schwab operated accounts. Filing No. 20-7.  The TD Ameritrade entities still exist as corporate entities but are winding down operations and are no longer registered broker dealers with the SEC.  Filing No. 20-8; Filing No. 20-9.  While Schwab maintains consumer-facing operations in Nebraska, it is incorporated in Delaware and headquartered in Texas.  Filing No. 20-11, ¶ 14. CS&CO, the entity that managers client accounts is incorporated in California.  Filing No. 20-11, ¶ 15.

The Nebraska Plaintiffs[7] held brokerage accounts with TD Ameritrade before it was acquired by Schwab.  *See* Filing No. 1 at 6, ¶ 15 (Masud)[8].  The Nebraska Plaintiffs' relationship with TD Ameritrade (and later Schwab) was governed by a customer agreement.  Filing No. 1 at 5–6, ¶ 12 (Masud)[9].  Relevant to the Parties' arguments, the customer agreement contained the following provision: "Governing Law, Jurisdiction, and Venue.  This Agreement will be governed by the laws of the State of Nebraska, but not its conflict of law provisions.  I hereby consent to the jurisdiction of and venue within the State of Nebraska for all disputes arising out of or relating to this Agreement."  Filing No. 1 at 5–6, ¶ 12.  After Schwab acquired TD Ameritrade, it transitioned the Nebraska Plaintiffs' accounts to CS&CO—Schwab's broker dealer subsidiary.  Case No. 8:25CV16, Filing No. 20-26 (Masud); Filing No. 20-28 (Jacobs).  All TD Ameritrade clients were transitioned to CS&CO.  Case No. 8:25CV16, Filing No. 20-6.

---

[7] This is a bit of a misnomer because Masud and Jacobs live in California. Filing No. 1 at 6, ¶ 14; Case No. 8:25CV16, Filing No. 1 at 5, ¶ 16.  But they get to enjoy a brief association with Nebraska to distinguish them from the plaintiffs who filed in California.
[8] Case No. 8:25CV16, Filing No. 1 at 5–6, ¶ 17 (Jacobs).
[9] Case No. 8:25CV16, Filing No. 1 at 5, ¶ 15 (Jacobs).

TD Ameritrade automatically enrolled the Nebraska Plaintiffs in a service wherein the TD Ameritrade would sweep uninvested cash into an interest-bearing account.  Filing No. 1 at 8–9, ¶¶ 30–31.  Schwab continued this practice.  *Id.* at 9 ¶ 31.  The Nebraska Plaintiffs—like plaintiffs around the country—allege the cash sweep programs generated *de minimis* returns for customers and exorbitant fees for the brokerage firm.  *Id.* at 1–4.

**B. Cash Sweep Class Actions—the National Landscape.**

This is not the first putative class action regarding cash sweep programs.  Similar suits are pending against dozens of financial institutions.  *In re Cash Sweep Programs Cont. Litig.*, 766 F. Supp. 3d 1346 (U.S. Jud. Pan. Mult. Lit. 2025).  Several of these putative class action targeted Schwab and TD Ameritrade.  In August and September of 2024, three sets of plaintiffs filed in the Central District of California.  *See*, Case No. 8:25CV16, Filing No. 20-11 (Loughran) (filed August 28, 2024); Filing No. 20-12 (Saunders) (filed September 6, 2024); Filing No. 20-13 (Davis) (filed September 30, 2024). One of these plaintiffs—Donald Saunders—was a former TD Ameritrade customer whose account was transferred to CS&CO after the merger.  Filing No. 20-12 at 4, ¶ 10. All three actions sought certification of national classes of clients.  *See*, Case No. 8:25CV16, Filing No. 20-11 at 13–14; Filing No. 20-12 at 17–18; Filing No. 20-13 at 17. The California Plaintiffs' substantive cause of action include breach of fiduciary duty, breach of contract, and claims under California's Unfair Competition Law.  *See*, Case No. 8:25CV16, Filing No. 20-12 at 17–22; Filing No. 20-12 at 22–26; Filing No. 20-13 at 19–23. The Saunders complaint requested certification of a class of TD Ameritrade and Schwab clients.  *See*, Case No. 8:25CV16, Filing No. 20-12 at 4, ¶ 12 ("As used herein, the term "Schwab" collectively refers to CS & Co., CSC, and TD Ameritrade"); Filing No.

20-12 at 17, ¶ 71 ("Plaintiff brings this class action and seeks certification of the following Class: Retail clients of Schwab who had cash deposits or balances in Schwab's cash sweep programs."). The cases were consolidated, and Judge Almadani appointed the California Plaintiffs' counsel as interim class counsel. Case No. 8:25CV16, Filing No. 20-14 (consolidation); Filing No. 20-17 (appointment of interim class counsel).

Nor is this the first putative class action filed by the Nebraska Plaintiffs' counsel. In October 2024, Masud's counsel filed a putative class action against Schwab in the Middle District of Florida (the Florida Action). Case No. 8:25CV16, Filing No. 20-16. Sensing the overlap with the consolidated suit in Central District of California, the California Plaintiffs intervened and asked the court to transfer. The Middle District of Florida agreed because "[t]he Schwab Litigation already represents the consolidation of several related cases, combined to promote judicial economy and conserve both the court's and the parties' resources . . . If the Court did not transfer this case, it could result in conflicting rulings on critical issues. And Proposed Intervenors emphasize that allowing this case to proceed parallel to the Schwab Litigation 'would undermine the leadership appointment' in that case." *Morris v. Charles Schwab Corp.*, No. 2:24-CV-985-SPC-NPM, 2024 WL 5125516 (M.D. Fla. Dec. 16, 2024), *Morris v. Charles Schwab Corp.*, No. 2:24-CV-985-SPC-NPM, 2024 WL 5125516, at *2 (M.D. Fla. Dec. 16, 2024). The court transferred the Florida Action to the Central District of California on December 16, 2024, where it was consolidated with the other Schwab cases. *Id.* at *3.

One final aspect of the broader cash sweep class action battleground requires attention. Reasoning that there were similar claims pending against all the major financial institutions, a subset of cash sweep plaintiffs—including Masud's counsel—asked the

Judicial Panel on Multidistrict Litigation to centralize the pending cases in the Southern District of New York for an industry-wide MDL.  *See e.g.,* Case No. 8:25CV16, Filing No. 20-19.  They chose the Southern District of New York because "[n]one of the other venues in which the Related Actions are pending possess a comparable evidentiary nexus or relevant industry-wide presence" and "many, if not most, of the key witnesses and much of the evidence in this case will be located in" New York.  *Id.* at 11.  Masud joined these arguments.   Case No. 8:25CV16, Filing No. 20-20 ("[Masud] join[s] in that response because they agree that transfer and consolidation is appropriate and that the United States District Court for the Southern District of New York is the best-suited transferee court.").  The panel denied centralization on February 7, 2025.  *In re Cash Sweep Programs Contract Litigation*, 766 F. Supp. 3d 1346.  In part, the panel reasoned transfer "motions could eliminate the multidistrict character of a litigation" because "the actions already are largely organized by defendant in different districts" and "where actions against a defendant are spread across multiple districts, motions to transfer have been filed."  *Id.*  So, allowing for the "ongoing self-organization of this litigation on a defendant-specific basis" via transfer motions was preferable to an industry-wide MDL.  *Id.*

### C. Cash Sweep Class Actions—The Nebraska Plaintiffs' Claims

Against this backdrop, the Nebraska Plaintiffs filed these actions.  On December 24, 2024, Masud filed a putative class action complaint.  He sought to certify a national class composed of "[a]ll persons who held cash positions in retirement accounts custodied by TD Ameritrade and whose cash was deposited into IDAs through the TD Ameritrade Sweep Program from the earliest available date until the date when the TD Ameritrade retirement accounts were each transitioned into Charles Schwab retirement

accounts and Charles Schwab's sweep program" and a subclass composed of California residents. Filing No. 1 at 20-21, ¶¶ 73–74. Substantively, Masud asserted claims for breach of fiduciary duty, breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, and violation of California's Unfair Competition Law. *Id.* at 25–35. On January 15, 2025, Jacobs filed her complaint. She sought to certify a national class composed of "[a]ll persons who held cash positions in brokerage accounts custodied by TD Ameritrade and whose cash was deposited into IDAs through the TD Ameritrade Sweep Program from the earliest available date until the date when the TD Ameritrade brokerage accounts were transitioned into Charles Schwab brokerage accounts" and a subclass of California residents. Case No. 8:25CV16, Filing No. 1 at 15, ¶ 55. Jacobs asserted the same legal claims as Masud. Case No. 8:25CV16, Filing No. 1 at 19–30.

The Court has jurisdiction under the Class Action Fairness Act—28 U.S.C. § 1332(d)—because the Nebraska Plaintiffs seek to certify a national class, creating minimal diversity, of more than 100 people and seek over 5 million dollars in damages. *See Doe v. SSM Health Care Corp.*, 126 F.4th 1329, 1332–33 (8th Cir. 2025) (explaining jurisdiction under the Class Action Fairness Act).

## LEGAL STANDARD

### A. The First-Filed Rule

The first-filed rule is a "well-established" principle that in "cases of concurrent jurisdiction, 'the first court in which jurisdiction attaches has priority to consider the case.'" *Northwest Airlines, Inc.*, 989 F.2d at 1005 (quoting *U.S. Fire Ins. Co. v. Goodyear Tire &*

*Rubber Co.*, 920 F.2d 487, 488–89 (8th Cir. 1990).[10]  This makes sense.  Allowing the same case to proceed in multiple federal courts wastes the resources of the parties and the judiciary.  *Keymer v. Mgmt. Recruiters Int'l, Inc.*, 169 F.3d 501, 503 (8th Cir. 1999). And, allowing multiple judges to weigh in on overlapping questions risks inconsistent decisions that impose conflicting obligations on the parties.  *Id.*  That is why "in the absence of compelling circumstances, the first-filed rule should apply."  *Northwest Airlines, Inc.*, 989 F.2d at 1005 (citation omitted).  The "first-filed rule is not intended to be rigid, mechanical, or inflexible, but is to be applied in a manner best serving the interests of justice."  *Id.* (citation omitted).  If the Court concludes the first-filed rule applies, it has discretion to dismiss, transfer, or stay proceedings.  *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 628 (9th Cir. 1991) (collecting cases).

As a flexible, fact-sensitive rule, the first-filed rule does not require perfect symmetry in claims or parties.  Instead, the parties and claims need only be substantially similar.  *See Siruk v. Robinhood Fin. LLC*, No. 21-CV-0415 (PJS/DTS), 2021 WL 1997252, at *2 (D. Minn. Mar. 31, 2021) (collecting authority).[11]  "Courts generally

---

[10] The first-filed rule discussed here applies to overlapping cases filed in two federal courts. This case does not involve—and the Court does not address—any additional complications that arise when parallel litigation is pending in both state and federal court.  *See e.g. Cent. States Indus. Supply, Inc. v. McCullough*, 218 F. Supp. 2d 1073, 1086–88 (N.D. Iowa 2002) (addressing these complications); *Beber v. NavSav Holdings, LLC*, 118 F.4th 921, 933 (8th Cir. 2024) (Kelly, J. dissenting in part) (suggesting remand to state court during the pendency of an appeal may affect the first-filed analysis) *rehearing granted Beber v. Navsav Holdings, LLC*, No. 23-2965, 2025 WL 88905 (8th Cir. Jan. 14, 2025).

[11] As other district courts have noted "[t]here is little guidance in the Eighth Circuit as to what constitutes 'parallel' litigation." *Pace Const. Co. v. Travelers Cas. & Sur. Co. of Am.*, 259 F. Supp. 2d 934, 937 (E.D. Mo. 2003).  The circuits who have addressed this issue in depth agree: the first-filed rule requires substantially similar parties and claims—not identical parties and claims.  *In re Amerijet Int'l, Inc.*, 785 F.3d 967, 976 (5th Cir. 2015); *Baatz v. Columbia Gas Transmission, LLC*, 814 F.3d 785, 790–91 (6th Cir. 2016); *Kohn L. Grp., Inc. v. Auto Parts Mfg. Mississippi, Inc.*, 787 F.3d 1237, 1240–41 (9th Cir. 2015) (collecting cases); *Wakaya Perfection, LLC v. Youngevity Int'l, Inc.*, 910 F.3d 1118, 1126–27 (10th Cir. 2018).  The Court finds the decisions of other circuits persuasive and consistent with the flexible inquiry envisioned in *N.W. Airlines*.  Indeed, the Nebraska Plaintiffs concede as much.  Filing No. 41 at 10 n.3 ("To be sure, the first-to-file rule 'does not necessarily require precise identity between the parties and actions'[.]")

consider three factors before applying the first-to-file rule: (1) the chronology of events; (2) the similarity of the parties involved, and (3) the similarity of the issues or claims at stake." *Siruk*, 2021 WL 1997252 at *2 (citing *Baatz*, 814 F.3d at 789 and *Alltrade, Inc.*, 946 F.2d at 625). Then, the Court considers whether there a good reason to depart from the rule and retain jurisdiction "such as evidence of 'inequitable conduct, bad faith, anticipatory suits, [or] forum shopping.'" *Baatz*, 814 F.3d at 789 (quoting *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 551 (6th Cir. 2007)).

### B. Transfer Under 28 U.S.C. § 1404(a)

28 U.S.C. § 1404(a) provides a district court may transfer any civil action to any other district or division where it might have been brought, "[f]or the convenience of the parties and witnesses" or "in the interest of justice." 28 U.S.C. § 1404(a). To determine if a case "might have been brought" in the transferee district, the Court considers whether the transferee district will, "(1) have subject-matter jurisdiction over the case, (2) have personal jurisdiction over the parties, and (3) be the proper venue for the transferred action." *Bhd. of Maint. of Way Employes Div./IBT v. Union Pac. R.R. Co.*, 485 F. Supp. 3d 1048 (D. Neb. 2020). Once the Court determines the case might have been brought in the transferee district, the statutory language reveals three general categories of factors that courts must consider when deciding a motion to transfer: (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interest of justice. *Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997). A district court is not, however, limited to these enumerated factors in assessing a transfer motion. *Id.* "Such determinations require a case-by-case evaluation of the particular circumstances at hand

and a consideration of all relevant factors." *Id.* There is no exhaustive list of specific factors to consider. *Id.* Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an "individualized, case-by-case consideration of convenience and fairness." *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964).

## DISCUSSION

The California Plaintiffs filed substantially similar claims first. So, transfer to the Central District of California is necessary "to conserve judicial resources and avoid conflicting rulings." *Keymer*, 169 F.3d at 503.

### A. The First Filed Rule Favors Transfer.

The first-filed rule applies here because the Nebraska Plaintiffs bring the same claims on behalf of the subset of the putative *Saunders* class against a wholly owned subsidiary of Schwab months after the California Plaintiffs filed their suits.

#### 1. Chronology of events.

The California Plaintiffs filed first. The relevant date for the first-filed rule is the date the complaints were filed. *HRB Tax Grp., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, No. 4:12-CV-00501-BCW, 2012 WL 4363723, at *3 (W.D. Mo. Sept. 21, 2012).[12] Here, the *Loughran* complaint was filed on August 28, 2024, and the *Saunders* complaint was filed on September 6, 2024. The *Masud* complaint was filed on December 24, 2024, and the *Jacobs* complaint was filed on January 15, 2025. So, the California Plaintiffs beat the Nebraska Plaintiffs to the starting line by at least three months.

---

[12] This issue is unsettled, with most circuits holding the filing of the complaint triggers the first-filed rule but one holding service is the triggering event. *HRB Tax Group, Inc.*, 2012 WL 4363723 at *3 (collecting cases on either side). Here, nobody argues using the service date instead of the filing date affects the analysis, so the Court applies the majority rule.

## 2. Similarity of the issues and claims at stake.

The claims are substantially similar.  Claims are substantially similar when the factual and legal issues overlap considerably.  For example, in *Doe v. Iowa Health Sys.*, the court concluded two putative class actions involved substantially similar issues and claims when they asserted identical claims arose from the same data breach.  *Doe v. Iowa Health Sys.*, No. 418CV00453SMRCFB, 2019 WL 13217438, at *5 (S.D. Iowa Sept. 26, 2019).  Same here.  The California Plaintiffs and the Nebraska Plaintiffs both challenge cash sweep practices by their brokers.  Indeed, the *Masud* complaint against TD Ameritrade retains the bulk of the factual allegations his counsel previously asserted against Schwab in the Middle District of Florida.  *See* Filing No. 45-1 (a redline between the *Masud* and *Morris* complaints).  Not only do they challenge the same general practice, but they also challenge the same company's practice.  One of the California Plaintiffs—Saunders—specifically challenges TD Ameritrade's cash sweep program at issue in the Nebraska Plaintiffs' complaints.  Case No. 8:25CV16, Filing No. 20-12 at 4, 17 ¶¶ 12, 71.  And, lead counsel in the California action indicated they are pursuing the pre-merger claims involving TD Ameritrade's cash sweep practices.  Filing No. 45-4 at 4 ("Plaintiffs' forthcoming consolidated complaint in the Schwab Consolidated Class Action will reiterate its cash sweep claims on behalf of TDA customers and will name TDA as a defendant."); *id.* at 5 (same).[13]  So, the Nebraska Plaintiffs and the California Plaintiffs

---

[13] After this order was drafted but before filing, the California Plaintiffs filed their consolidated complaint. As promised, the consolidated complaint names TD Ameritrade as a defendant, includes TD Ameritrade clients as plaintiffs, and pursues pre-merger claims against TD Ameritrade. *See* Filing  No. 46-1 at 5, ¶ 1 ("This action alleges claims for breach of contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, and unjust enrichment, on behalf of a Class of clients of Charles Schwab and TD Ameritrade who participated in the Charles Schwab Cash Sweep Programs and the TD Sweep Program during the Class Period (as these terms are further defined below) against Defendants The Charles Schwab Corporation, Charles Schwab & Co., Inc., TD Ameritrade, Inc., TD Ameritrade Clearing, TD Ameritrade

base their claims on the same underlying practice by the same company.  Moreover, the Nebraska and California Plaintiffs assert identical causes of action—breach of contract, breach of fiduciary duty, and California statutory claims.  *Compare* Case No. 8:25CV16, Filing No. 20-12 at 17–22; Filing No. 20-12 at 22–26; Filing No. 20-13 at 19–23 (the California Plaintiffs) with Case No. 8:24CV499, Filing No. 1 at 25–35, Filing No. 1 at 19–30 (the Nebraska Plaintiffs).  So, if the Court retained jurisdiction over these cases, it would apply the same law to the same facts as the Central District of California.  Applying the first-filed rule avoids this wasteful outcome.

### 3.  Similarity of the parties involved.

The parties here are substantially similar to the parties in the California action.

Start with the defendants.  Courts frequently find substantially similarity between defendants when one defendant is a subsidiary of the other.  *See e.g. Brinker v. Kraft Heinz Foods Co.*, No. 4:24-CV-704-MTS, 2024 WL 3638243, at *2 (E.D. Mo. Aug. 1, 2024). *Brinker* is instructive.  There, like here, the court addressed putative class actions pending in two districts.  *Id.*  The first-filed case named The Kraft Heinz Company, and the second-filed case named the Kraft Heinz Food Company—a corporate subsidiary.  *Id.* The court concluded the subsidiary was substantially the same party as the parent company with the same interests in the litigation.  *Id.*  Here, the California Plaintiffs name Schwab and the Nebraska Plaintiffs name TD Ameritrade.   But post-merger TD Ameritrade is a wholly owned subsidiary of Schwab.  Filing No. 20-3 at 4.  And Schwab assumed all of TD Ameritrade's pre-merger liabilities.  The Charles Schwab Corporation, Current Report (Form 80-k) (Oct. 2, 2020) Ex. 2.1 Art. 2 § 2.01(c) ("From and after the

---

Institutional Division, and TD Ameritrade Investment Management, LLC (as further defined below)."). This confirms the Court's analysis of the similarity of claims and parties.

Effective Time, the Surviving Corporation shall possess all the rights, powers, privileges and franchises and be subject to all of the obligations, liabilities, restrictions and disabilities of the Company and Merger Sub, all as provided under the Delaware Law."). Schwab has an equal interest in defending the legality of TD Ameritrade's cash sweep practices. So, the Nebraska and California Plaintiffs sued substantially similar defendants—members of the same corporate family who are aligned on every issue.

Turning to the plaintiffs, the putative class here is fully encompassed by the putative class in California. In a class action, the Court compares the putative classes to determine whether they are substantially similar. *Baatz*, 814 F.3d at 791. For example, the court in *Smiley v. Arizona Beverages, LLC* found the plaintiffs substantially similar when "the putative nationwide classes in the instant case and the [first-filed] action are practically identical, and both encompass the putative Maryland class in the instant case and the putative California class in" the first-filed case. *Smiley v. Arizona Beverages, LLC*, No. CV MJM-23-1107, 2024 WL 327044, at *2 (D. Md. Jan. 29, 2024). Here, the *Saunders* class definition swallows the *Masud* and *Jacobs* class definitions. Specifically, *Saunders* seeks to certify a national class composed of "Retail clients of Schwab who had cash deposits or balances in Schwab's cash sweep programs." Case No. 8:25CV16, Filing No. 20-12 at 17, ¶ 71. Schwab is defined in the complaint to include "CS & Co., CSC, and TD Ameritrade." *Id.* at 4, ¶ 12. Confirming that the *Saunders* class definition encompasses TD Ameritrade clients, the named plaintiff in *Saunders*—like Masud and Jacobs—originally held an account with TD Ameritrade that was transitioned to Schwab. *Id.* at ¶ 10. The Saunders class therefore contains all customers who held an account with TD Ameritrade, meaning not a single member of the putative class here is not a

13

member of the putative *Saunders* class.  Tying it all up, class counsel in California is pursuing claims against Schwab and TD Ameritrade, including pre-merger claims against TD Ameritrade.  Filing No. 45-4 at 4; Filing No. 46-1 at 5, ¶ 1.  Thus, here there are no "significant disparities in the definition of the putative classes."  *Martin v. Medicredit, Inc.*, No. 4:16CV01138 ERW, 2016 WL 6696068, at *5 (E.D. Mo. Nov. 15, 2016).  Rather the putative class here is a subset of a putative California class.

To summarize: the parties here are substantially similar to the parties in the California Action.  Retaining jurisdiction over this case would force the defendant and the class to litigate the same issues in two different fora and risk inconsistent outcomes.  Applying the first-filed rule allays these risks.

### 4.  Equitable Considerations

There are no red flags requiring departure from the first-filed rule.  For example, applying the first-filed rule may be inappropriate if the first-filing party knows the other party is going to file a lawsuit and engages in "a preemptive strike" rather than "a suit for damages or equitable relief."  *Northwest Airlines, Inc.*, 989 F.2d at 1007.  Or the court may depart from the rule if there is "evidence of inequitable conduct, bad faith, anticipatory suits, [or] forum shopping."  *Baatz*, 814 F.3d at 789 (internal quotations omitted).  None of these red flags appear here.  The California Plaintiffs filed months ahead of the Nebraska Plaintiffs.  There is no evidence that the California Plaintiffs knew of the Nebraska Plaintiffs' suit and filed as a preemptive strike.  Nor is there evidence suggesting that the California Plaintiffs raced the courthouse to secure a more favorable forum.  Nor do the Nebraska Plaintiffs suggest that the California Plaintiffs mislead them or otherwise acted in bad faith.  Finally, the California Plaintiffs request class certification and damages

rather than purely declaratory relief, suggesting they are interested in litigating this case on the merits, not blocking the Nebraska Plaintiffs.  Case No. 8:25CV16, Filing No. 20-12 at 22–23; Filing No. 20-12 at 24–25; Filing No. 20-13 at 23–24. Overall, this case is a garden variety class action involving competing forums and lacks "compelling circumstances" justifying departure from the first filed rule.  *Northwest Airlines, Inc.*, 989 F.2d at 1005 (citation omitted).

### 5.  Remedy

Transfer is the appropriate remedy.  Because the first-filed rule applies, the Court has discretion to dismiss, transfer, or stay proceedings. *Alltrade, Inc.*, 946 F.2d at 628. Here, transfer is appropriate.  Specifically, the Central District of California consolidated similar claims and appointed interim class counsel for resolution of common legal and factual questions.  Case No. 8:25CV16, Filing No. 20-14; Filing No. 20-17. Transfer allows for a single streamlined determination of these issues.  And at least one other suit pending in another district has been transferred for consolidation.  *Morris*, 2024 WL 5125516 at *3.  Proceedings in the Central District of California are still in their early stages, lessening any prejudice to the class or defendants that may countenance a stay.  Filing No. 45-4 (indicating class counsel will file a consolidated complaint after the transfer motions here are resolved).  Moreover, as the Panel on Multidistrict Litigation recognized, the "ongoing self-organization of this litigation on a defendant-specific basis" is an efficient and effective way to resolve the cash sweep claims nationwide. *In re Cash Sweep Programs Contract Litigation*, 766 F. Supp. 3d 1346 at *3.  Transferring the Nebraska Plaintiffs' cases is consistent with the purposes of first-filed rule and will "secure the just, speedy, and inexpensive determination of" these actions.  Fed. R. Civ. P. 1.

15

**B.  The Nebraska Plaintiffs' Arguments to the Contrary are Unavailing.**

Seeking to avoid the first filed rule, the Nebraska Plaintiffs raise three arguments. None persuade.

*First*, the Nebraska Plaintiffs argue they are the first to file because their claims against TD Ameritrade are distinct from the California Plaintiffs claims against Schwab. The problem is—even assuming the Nebraska Plaintiffs are right about the distinction between Schwab and TD Ameritrade—the California Plaintiffs still beat the Nebraska Plaintiffs to the starting line.  Specifically, Saunders, like the Nebraska Plaintiffs, was a TD Ameritrade customer whose account were transferred to CS&Co. after the merger. Case No. 8:25CV16, Filing No. 20-12 at 4, ¶ 10.  The *Saunders* class definition, like the class definition here, specifically includes TD Ameritrade customers.  *Id.* at 4, 17 ¶¶ 12, 71.  And, the *Saunders* complaint and the Nebraska Plaintiffs' complaints assert identical theories of recovery.  *Compare* Case No. 8:25CV16, Filing No. 20-12 at 22–26 *with* Filing No. 1 at 25–35; Case No. 8:25CV16, Filing No. 1 at 19–30 (the Nebraska Plaintiffs). So, even accepting that claims against Schwab are different from claims against TD Ameritrade, there is still an earlier filed action asserting identical legal theories on behalf of the same class pending in the Central District of California.  To the extent the Schwab claims and the TD Ameritrade claims involve "different and separate disclosures, customers, contracts, cash sweep programs, and interest rates (i.e., cash sweep rates and prevailing market rates)" the Central District of California is more than capable of structuring discovery, class certification, and merits adjudication to account for these differences.  Filing No. 41 at 11.

16

*Second*, the Nebraska Plaintiffs argue, in passing, the first file rule cannot apply to the class because the class has not yet been certified in the Central District of California. Filing No. 41 at 12 n.5.  The Sixth Circuit, rejecting a similar argument in *Baatz*, reasoned if class certification was required "the first-to-file rule might never apply to overlapping class actions as long as they were filed by different plaintiffs." 814 F.3d at 971.  The Court agrees.  Deciding otherwise would lead to the waste of substantial resources and subject classes to conflicting decisions, which is inconsistent with the purpose of the first-filed rule.  The Court therefore finds *Baatz* more persuasive than the Nebraska Plaintiffs' contrary district court authority.

*Third*, the Nebraska Plaintiffs argue a provision of TD Ameritrade's client agreement operates as a mandatory forum selection clause and requires this litigation proceed in the District of Nebraska.  The contract language does not bear the weight the Nebraska Plaintiffs put on it.  Certainly, a mandatory forum selection clause in the parties' contract -- one in which the parties *must* litigate in a particular forum -- may be a good reason to depart from the first-filed rule.  *See e.g., Enercon, Inc. v. Elite Energy Sys., Inc.*, No. CIV 06-4051, 2006 WL 8453753, at *2 (D.S.D. Sept. 15, 2006); *Universal Operations Risk Mgmt., LLC v. Glob. Rescue LLC*, No. C 11-5969 SBA, 2012 WL 2792444, at *5 (N.D. Cal. July 9, 2012) (collecting cases).  But the first-filed rule trumps a permissive forum selection clause -- one in which the parties *may* litigate in a particular forum. *C21FC LLC v. NYC Vision Cap. Inc.*, No. CV-22-00736-PHX-SPL, 2022 WL 2646168, at *3 (D. Ariz. July 8, 2022) (collecting cases).  Here, the forum selection clause provides "I hereby consent to the jurisdiction of and venue within the State of Nebraska for all disputes arising out of or relating to this Agreement." Filing No. 1 at 5–6, ¶ 12.  In *Dunne v. Libbra*,

17

the Eighth Circuit concluded a materially identical clause was permissive rather than mandatory. *Dunne v. Libbra*, 330 F.3d 1062, 1062 (8th Cir. 2003) ("[T]he parties consent to jurisdiction to [sic] the state courts of the State of Illinois.").[14] Here, like there, the clause gains the client's consent, "minimizing the risk that anything more than a frivolous challenge to jurisdiction may arise." *Id.* at 1064. But it does not require a lawsuit to proceed in Nebraska. It does not refer to Nebraska as the "exclusive" or "only" venue or say that a suit "shall," "will," or "must" be brought in Nebraska. Overall, the Court "find[s] no language that has an ordinary meaning that would suggest exclusivity." *Id.*[15] So, the forum selection clause is permissive and is not a basis to depart from the first-filed rule.

To summarize: the first-filed rule applies, the Nebraska Plaintiffs have not identified compelling circumstances to depart from it, and transfer is the proper remedy. That likely ends the matter because "when the first-to-file rule applies, courts need not analyze

---

[14] The Eighth Circuit has not squarely addressed whether state or federal law applies to the question of whether a forum selection clause is permissive or mandatory. *Smart Commc'ns Collier Inc. v. Pope Cnty. Sheriff's Off.*, 5 F.4th 895 (8th Cir. 2021). It does not matter here. While *Dunne* arose under Illinois law, the relevant principles of Nebraska law are the same. *Polk County Recreational Ass'n*, 734 N.W.2d at 757–59 (relying on the plain language of the contract and holding clauses that "provide only that the parties consent and submit to the jurisdiction of Pennsylvania courts" were permissive). So, the outcome is the same whether applying Federal or Nebraska cases. Nor has the Court's research identified any case—state or federal—deciding this language is mandatory.

[15] Other courts addressing similar contract language have reached the same conclusion. *Ulrich v. O'Keefe*, No. 23-CV-686 (MKV), 2024 WL 1313875, at *4 (S.D.N.Y. Mar. 26, 2024) (holding "consents to the jurisdiction of the courts of the State of Delaware and of the United States Federal courts sitting in the State of Delaware" was permissive); *Hex Stone Inc. v. JRC Marine, LLC*, No. 2:19 CV 24 (JMB), 2019 WL 13104817, at *2 (E.D. Mo. Aug. 7, 2019) (collecting cases and concluding "[plaintiff] and [defendant JRC] hereby consents to the jurisdiction of any federal court located within the city of New Orleans, Louisiana to resolve any disputes arising under this Charter" was permissive); *Waste Mgmt. of Louisiana, L.L.C. v. Jefferson Par.*, 48 F. Supp. 3d 894, 911–12 (E.D. La. 2014) (concluding "the parties hereto submit to the jurisdiction of the 24th Judicial District for the Parish of Jefferson, State of Louisiana" was permissive). Indeed, "[p]ermissive forum selection clauses, often described as '*consent to jurisdiction*' clauses, authorize jurisdiction and venue in a designated forum, but do not prohibit litigation elsewhere." Wright & Willer, § 3803.1 Law Applicable—Forum Selection Clauses, 14D Fed. Prac. & Proc. Juris. § 3803.1 (4th ed.) (emphasis added) (collecting cases).

section 1404(a)."  *See Philadelphia Indem. Ins. Co. v. Cambria Co., LLC*, No. 24-CV-01075 (JMB/DJF), 2025 WL 253388, at *3 (D. Minn. Jan. 21, 2025).[16]

### C. Even if the First-Filed Rule did not Apply, 28 U.S.C. § 1404(a) Favors Transfer.

In any event, even if the Nebraska Plaintiffs could get around the first filed rule, it is out of the frying pan and into the fire because transfer is equally appropriate under 28 U.S.C. § 1404(a).  § 1404(a) allows the Court to any civil action to any other district or division where it might have been brought, "[f]or the convenience of the parties and witnesses" or "in the interest of justice."

These cases could have been brought in the Central District of California.  A case could have been brought in a transferee district if the transferee district has subject matter jurisdiction, personal jurisdiction, and is a proper venue. *Brotherhood of Maintenance of Way Employes Division/IBT*, 485 F. Supp. 3d at 1057.  Those requirements are met because the Central District of California has subject matter jurisdiction under the Class Action Fairness Act and TD Ameritrade agrees personal jurisdiction and venue are proper there.  Indeed, Schwab is already litigating substantially similar cases in the Central District of California.

The convenience of the parties favors transfer.  Masud and Jacobs live in California and Schwab is engaged in ongoing class litigation over the same issues in the Central District of California.  Filing No. 1 at 6, ¶ 14 (Masud); Case No. 8:25CV16, Filing No. 1 at 5, ¶ 16 (Jacobs); Filing No. 20-11; Filing No. 20-12; Filing No. 20-13. Overall, it is more

---

[16] Some courts, notably the Second Circuit, have taken a slightly different approach wherein the 28 U.S.C. § 1404(a) analysis informs whether a "balance of convenience" exception to the first-filed rule applies. *See Emps. Ins. of Wausau v. Fox Ent. Grp., Inc.*, 522 F.3d 271, 275 (2d Cir. 2008).  The Eighth Circuit has not addressed a similar exception. To the extent this approach has merit, the Court addresses transfer under § 1404(a) *infra* Section C.

convenient for the parties to litigate in the forum where the plaintiffs live, and the defendants are already litigating.

The convenience of the witnesses is neutral. Neither side has identified the location of key trial witnesses. Elsewhere, Masud argued that the Southern District of New York is more convenient for the witnesses. Filing No. 20-20. Masud and Jacobs live in California. Case No. 8:25CV16, Filing No. 1 at 6, ¶ 14; Filing No. 1 at 5, ¶ 16. And the issues in this litigation are national in scope. At best, the Nebraska Plaintiffs show that one document custodian is in Nebraska but that custodian's importance to the overall litigation is unclear. *See* Case No. 8:25CV16, Filing No. 20-22. Overall, this factor does not move the needle on transfer.

Most importantly, the interests of justice conclusively favor transfer for three reasons. First, as discussed above, given the substantial overlap between the California and Nebraska actions, forcing Schwab to fight this battle on two fronts creates a palpable risk of inconsistent rulings and wasted time, money, and effort. *See Supra* Section A. These risks equally affect class members whose fortunes would be tied to two class actions in two venues. *See Supra* Section A. Second, keeping this action in Nebraska splits the claims against TD Ameritrade into two, throwing a wrench in the ongoing self-organization of cash sweep litigation by defendant. *See In re Cash Sweep Programs Contract Litigation*, 766 F. Supp. 3d 1346 at *3. In the same vein, it would also undercut the California Plaintiffs' class counsel's ability to litigate and negotiate on behalf of the class. *See Morris*, 2024 WL 5125516 at *2 (concluding the same). Third, the Nebraska Plaintiffs' other actions undercut their assertion that Nebraska is the proper forum. Before the Judicial Conference on Multidistrict Litigation, Masud argued that this case requires

20

*national* consolidation because the challenged conduct took place in the Southern District of New York, undermining their argument that Nebraska has a strong connection to this litigation.  Filing No. 20-19; Filing No. 20-20.  Not only that, but Masud and Jacobs seek to certify a class of California residents under California's Unfair Competition Law, which only applies to conduct "emanating" from California. *Warner v. Tinder Inc.*, 105 F. Supp. 3d 1083, 1096 (C.D. Cal. 2015).  Considering the prejudice to defendants, prejudice to the class, judicial economy, and tenuous relationship between the claims and the District of Nebraska, the interests of justice require the Court to transfer these cases to the Central District of California.

In arguing against transfer, the Nebraska Plaintiffs rely on two primary facts. Neither move the needle on transfer.

*First*, they argue TD Ameritrade is a Nebraska corporation.  Filing No. 41 at 8–9. While technically true, TD Ameritrade are no longer headquartered in Nebraska.  Rather, the TD Ameritrade entities that are based in Nebraska are largely defunct.  Case No. 8:25CV16, Filing No. 20-8; Filing No. 20-9 (FINRA records showing the Nebraska entities are no longer active). Certainly, it makes sense, in the abstract, to venue a class action in the defendant's center of operations where management makes policy decisions and records are located.  *See e.g., Foster v. Nationwide Mut. Ins. Co.*, No. C 07-04928 SI, 2007 WL 4410408, at *3–5 (N.D. Cal. Dec. 14, 2007).  But those considerations carry less weight here because that nerve center is no longer Nebraska.  So, under these unique circumstances, TD Ameritrade's state of incorporation is a minor factor in the transfer analysis and does not change the Court's conclusion.

*Second*, they argue the forum selection clause in the TD Ameritrade client agreement requires litigation here in Nebraska.  But, as discussed *supra* Section B, that clause is permissive not mandatory.  And "courts give permissive forum-selection clauses less weight than mandatory forum-selection clauses when considering a motion to transfer."  *DataCard Corp. v. Softek, Inc.*, 645 F. Supp. 2d 722, 732 (D. Minn. 2007).  Here, the parties' consent to jurisdiction in Nebraska does not overcome the strong equitable and prudential reasons for transfer.

To summarize: the interests of justice and convenience to the parties independently favor transfer to the Central District of California.

### D. The Parties' Remaining Motions are Best Addressed by the Transferee Court.

Three loose ends remain – the California Plaintiffs' Motion to Intervene, Masud's Motion to Consolidate, and Masud's Motion for a Hearing.  The California Plaintiffs seek the same relief as TD Ameritrade (transfer to the Central District of California) based on the same arguments.  Because transfer is appropriate based on TD Ameritrade's motion, the Court need not address whether the California Plaintiffs are entitled to intervene under Fed. R. Civ. P. 24.  If necessary, the California Plaintiffs can reraise the issue after transfer.  Likewise, because the Court is transferring this case, Masud's pending motions are best addressed by the transferee court in the first instance.  The Court leaves future progression of this case in the capable hands of the Central District of California.

### CONCLUSION

The California Plaintiffs filed first so venue belongs in the Central District of California.  The Nebraska Plaintiffs have shown no compelling circumstances requiring parallel litigation in the District of Nebraska.  THEREFORE, IT IS ORDERED

1.  TD Ameritrade's Motions to Transfer (Filing No. 32; Case No. 8:25-cv-16, Filing No. 18) are granted.  The Clerk of the Court is directed to transfer case numbers 8:24-cv-499 and 8:25-cv-00016 to the United States District Court for the Central District of California.

2.  The California Plaintiffs' Motions to Intervene and Transfer ((Filing No. 18; Case No. 8:25-cv-16, Filing No. 7) are denied as moot without prejudice to reassertion after transfer.

3.  Masud's Motion to Consolidate (Filing No. 14) and Motion for a Hearing (Filing No. 26) are denied as moot without prejudice to reassertion after transfer.

Dated this 10th day of June, 2025.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge